[Cite as *State v. King*, 2018-Ohio-1319.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF DAYTON | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.: 27777 |
| | : | |
| v. | : | T.C. NO.: 2017-CRM-5891 |
| | : | |
| ROBERT KING | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 6th day of April, 2018.

. . . . . . . . . . .

BARBARA DOSECK, Atty. Reg. No. 79159, 101 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee


MARTIN BEYER, Atty. Reg. No. 60078, 204 S. Ludlow Street, Suite 204, Dayton, Ohio
45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the October 19, 2017 Notice of Appeal of Robert King. King appeals from his October 4, 2017 Judgment of Conviction in the Dayton Municipal Court, following a bench trial, for failure to maintain exterior premises, in violation of R.C.G.O. 93.46(E), a minor misdemeanor. We hereby reverse and vacate

the judgment of the municipal court.

{¶ 2} King received a citation on September 7, 2017, which provides: "you did unlawfully cause/commit failure to maintain exterior premises free of objects, materials, or conditions which create a health, safety, fire hazard, or public nuisance, to wit: trash and debris throughout yard, trash and debris on rear porch."

{¶ 3} On September 20, 2017, King pled not guilty, and the bench trial occurred on October 4, 2017. At the start thereof, the prosecutor advised the court that "the conditions are abated and we still tend [sic] to proceed given that Mister King has prior violations."

{¶ 4} Kenneth Jackson testified that he is a conservation specialist with the City of Dayton, having been so employed for almost six months. Jackson stated that in the course of his employment, he performs exterior inspections "for environmental violations, as well as * * * structural violations." He stated that on September 7, 2017, he wrote a citation to King at the address of 218/220 Rockwood Avenue for a violation of R.C.G.O. 93.46(E). Jackson stated that he had received a complaint about the trash and debris at the property, and that when he proceeded to the address, he observed "a couple of dirty diapers that had been shredded. I went to the back, there was trash and debris throughout the back. I believe there was trash and debris that was on the rear porch, as I said, of two twenty." Jackson stated that the "trash and debris put on the rear porch posed * * * a serious life safety issue because it could, technically block the egress during a fire or such," as well as hinder the police or fire department from entering the building in an emergency. Jackson stated that trash and debris "can attract rodents, cause rodent infestation."

{¶ 5} Jackson stated that King is the legal owner of the property, and King so stipulated. Jackson identified four photographs taken by him of the property. Exhibit 4 depicts the rear porch of the property, and trash and a box spring are depicted thereon. Jackson testified that Exhibit 5 depicts "trash and debris within the bushes of the house," and that Exhibit 6 "is also a picture of trash and debris along the fence line * * * in the trees." Finally, he stated that Exhibit 7 depicts trash and debris, as well as dirty diapers, in the front yard of the residence. Jackson stated that the photos accurately depict the conditions at the property on September 7, 2017.

{¶ 6} The following exchange occurred on cross-examination:

Q. Do you recall me leaving a voicemail with you on September seventh?

A. Yes.

Q. Do you recall me within that voicemail telling you that Mister Wetzel had a copy of that lease in question for that particular property and that if you needed to get it directly from me, I would be willing to email that to you[?]

A. Yes.

Q. Did you respond to my questions about if you needed any further information?

A. No sir. I did not understand your phone number on my voicemail.

{¶ 7} On re-direct, the following exchange occurred:

Q. The Defendant made reference to a phone call that he made to

you regarding another inspector[']s inspection of his property, is that fair to say?

A. That is correct.

Q. * * * Is it also fair to say that that phone call gave you notice that Mister King had been involved, that this property had been an issue for housing inspection before?

A. Yes.

**{¶ 8}** On re-cross examination, when asked by King why he did not ask the other housing inspector involved with the previous inspection for King's phone number and email address, Jackson responded, "I did not think to do that."

**{¶ 9}** King testified that he leases the property at issue to Thaddeus Earl. He provided a copy of the lease, the term of which is December 15, 2016 to the last day of November, 2017, and he testified that it requires Earl to abide by all housing code regulations. King testified as follows:

* * * In the past, I've been here two previous times and that has been deemed an actionable defense in both of those cases and they weren't, they did not go to trial. So, I'm wondering whether the law has changed or why that is not still a valid defense and why the people committing the actions or the offenses are not the ones being issued the tickets. I've had these conversations with Mister Wetzel and I've tried to have that conversation with Mister Jackson, to try and have these citations issued to the people responsible for the offenses. In my opinion, that is the only way that these, that the people that are committing the offenses are going to change their

way of behavior. For them to issue the tickets to me, the property owner, the one not committing the offenses, I agree that I would be responsible for housing code violations that are part of the property, paint, gutters, roofing, those kinds of things that are directly responsible for the owner of the property. Offenses such as trash, debris * * * or storing their personal property outside, particularly in this case, when I'm not able to remove their personal property without eviction and a bailiff coming out with a writ served, I can't touch any personal property of a tenant so I'm at a loss to do anything about it. I don't know why, in this particular case, the prosecuting attorney chose to bring this to trial since herself and the previous prosecutor deemed this an actionable defense in the past.

**{¶ 10}** On cross-examination, the following exchange occurred:

Q. * * * Reviewing the rental agreement that you gave me before court, is it fair to say that this rental agreement authorizes you or gives you leave to file an eviction, if your alleged tenant does not comply with the terms of the lease?

A. Yes.

Q. What is the case number for your eviction against a tenant?

A. A three-day notice was served yesterday.

Q. * * * So, when this was filed initially, when you originally received notice of this, of this case, did you file an eviction?

A. No.

* * *

Q. At this point you've taken steps?

A. Yes.

* * *

Q. And this is not the first issue you've had with Thaddeus, is it? * * *

A. No.

* * *

Q. As a matter of fact, you made reference to it yourself. You've dealt * * * with another inspector regarding issues at this property.

A. Yes.

Q. Okay and at that point and time, what steps did you take to evict Thaddeus?

A. None.

{¶ 11} When asked if he "had any response based on the questions posed * * * by the prosecutor," King responded as follows:

* * * The reason no action was taken against Thaddeus Earl previously when David Wetzel issued the ticket to me previously, was I was under the understanding that with my discussions that occurred during court on that day, that they were going to issue the ticket to Thaddeus Earl. They excused me from the case and I was under the impression that Thaddeus Earl would receive the ticket. Obviously, that didn't happen since I got another ticket from Ken Jackson approximately four weeks later. So, I was, I was under the impression that when the case was dismissed because I

had an actionable defense with the lease, that they would issue the ticket to Thaddeus Earl, which is what I wanted to happen. * * * I don't have a lot of leverage other than eviction to get someone to do these kinds of, what I call, common sense maintenance issues of picking up their own trash and storing their items inside. Now, since then, I talked to Mister Earl yesterday and he received the three-day notice. Bulk waste is scheduled to come out today and remove the mattress and some other items he may have had and he agreed to police the yard. Whether that happens or not I'm not sure, since the ticket was issued to me and he doesn't think he's responsible for anything, which leaves me with no leverage to have someone maintain the property like a normal person would of picking up their own trash and debris and not storing items outside. So because of other items, he's back on his rent and failure to maintain the property in the proper sense of picking up trash, which would be a simple item and some noise complaints, I did issue the three-day notice yesterday. * * *

{¶ 12} The following exchange occurred between King and the court:

THE COURT: I'm looking at this lease agreement. What this agreement is and I'm looking at the second page and Mister King, I'm assuming that this part that's [highlighted] in yellow, you [highlighted] that and that's the part you want me to look at.

THE DEFENDANT: I do.

THE COURT: That's the part that you believe supports that the tenant is responsible for cleanup.

THE DEFENDANT:    I think that's the primary part that supports that, yes.

THE COURT:    Okay.    So, that part says use and occupancy and it is the second paragraph.    It says, the resident agrees to use and occupy the premises in a safe, proper, and sanitary manner. The resident shall not use any part of the * * * premises for any noisy, disorderly, unlawful, or immoral purpose or in any manner offensive to the neighbors, or for any purpose deemed hazardous by the owner.    The resident [further] agrees to comply * * * with all applicable state and local housing health and safety codes and any other laws or ordinances or insurance regulations, in or about the premises.    And so, as I read this his agreement is to comply with those.    His agreement is not that he is going to be responsible for anything. I also read it in conjunction with the resident's responsibilities, number seven, I mean, I'm sorry number twelve, which is to keep the lawn cut and trimmed as required to maintain a neat appearance.    There is nothing else in this lease that talks about * * * how this property should be maintained. Yeah, I think it is common sense that it should be maintained neat, a neat appearance but you want me to take it a step further.    You want me to look at the [highlighted] areas and read that there is something in writing where he assumes responsibility for maintaining the facilities and all exterior premises free from objects, materials, or conditions which would create a health, safety and this lease doesn't do that. * * *

THE DEFENDANT:    May I –

THE COURT: So I, nope. I find that this lease doesn't do that. I * * * have a couple of problems. This ordinance, to me, it looks like it is written that there is an affirmative defense created in the ordinance. The City basically agrees with that and they have to show that there is no affirmative defense. You have, by preponderance of the evidence, to show that there is. I don't think that this lease does that. I want to be clear. I do not believe that this lease does what you testified that it does and absent some other evidence, your affirmative defense has not been proved and so I am going to make a finding of guilty in this matter.

* * *

THE COURT: Sir, is there anything you'd like to say regarding sentencing before I sentence?

THE DEFENDANT: In regard to sentencing, I have taken steps to remove, what I consider, the offensive tenant from the property with the three-day notice that has been served, bulk pickup has been contracted. They are supposed to be there today - -

* * *

THE DEFENDANT: [ - - ] to remove the items. The tenant agreed with me on the phone yesterday that he would clean up whatever trash and debris is on the exterior of the property. I will go by today and confirm that that happens.

{¶ 13} The court imposed a fine of $150.00 and suspended $75.00 thereof, as well as court costs. King asserts a sole assignment of error herein as follows:

THE TRIAL COURT ERRED IN CONVICTING DEFENDANT ROBERT KING OF FAILING TO MAINTAIN REAL ESTATE.

**{¶ 14}** King argues that the City erroneously convicted him of violating R.C.G.O. 93.46(E). According to King, the City improperly prosecuted him and should have prosecuted Earl. King asserts that "the tenant assumed responsibility for maintaining the premises when he executed the Lease. The Lease specifically reflects that the tenant must comply with all housing codes, which necessarily includes R.C.G.O. 93.46(E)." According to King, "the City previously dismissed its prior case against King based for [sic] the same property and conditions and based on the same Lease. Double jeopardy, anyone?" Citing R.C.G.O. 93.02, King asserts that an "Owner" is defined in part as a "lessee, or other person, firm, or corporation in control of a building," and that "the City should have cited the tenant."

**{¶ 15}** The City responds that as "the owner of the subject property, Mr. King had an obligation to maintain its exterior unless the occupant had undertaken that duty." According to the City, "Mr. King wants to rely on the lease provisions to shift responsibility to Mr. Earl but conveniently ignores the provision that allowed him to enforce the lease against his tenant." The City argues that "Mr. King's position is that if he submits his lease as a 'get out of jail free card' he can endlessly ignore his tenant's failure to undertake responsibility." The City asserts that "a great deal of Mr. King's testimony also established that he was both aware and indifferent to the fact that the maintenance responsibilities had not been assumed by his tenant." According to the City, King's "awareness that the responsibilities detailed in his written agreement had not actually been assumed in over four months – if at all – undercuts any affirmative defense to the

City's statute."

{¶ 16} In reply, King asserts that he "had the burden of proof, by a preponderance of evidence, of producing a written agreement reflecting that the tenant assumed responsibility to maintain the property.  He did that."  King argues that "the tenant assumed responsibility for maintaining the premises when he executed the Lease.  The Lease specifically states that the tenant must comply with all housing codes, which necessarily includes R.C.G.O. 93.46(E)."  King asserts that the "ordinance requires only a 'written agreement.'  The Lease is a written agreement.  Case closed."

{¶ 17} R.C.G.O. 93.46 provides:

Every owner of a dwelling shall be responsible for the provision of all facilities, utilities, services, or conditions required by this chapter for dwelling or rooming units and premises, *except where such responsibility is assumed by an * * * occupant by written agreement.*  Such responsibility shall include, but not be limited to, the following:

* * *

(E) Maintaining driveways, terrace steps, yard walks, fences, yard cisterns, and all exterior premises free of objects, materials, or conditions which create a health, safety, or fire hazard or which is a public nuisance.

{¶ 18} R.C.G.O. 93.02 defines an occupant as "[a]ny person living, sleeping, cooking or eating in or having possession or use of a dwelling unit or rooming unit."  We conclude that Thaddeus is an "occupant" within the meaning of R.C.G.O. 93.46.

{¶ 19} The lease provides, as noted above, that the "Resident further agrees to comply with all applicable * * * local housing, health and safety codes."  We conclude

that in entering into the lease, Thaddeus assumed the responsibility to comply with R.C.G.O. 93.46(E).

{¶ 20} The City appears to have relied on the following section of the lease:

**OWNER'S RIGHT TO RECOVER.** If the rent is not received on the date specified in Paragraph #2 of this Agreement, or if the Resident violates any of the terms and conditions of this Agreement, or any addendums thereof, including any community guidelines herein or hereafter adopted by the Owner, then the Owner may at any time begin eviction proceedings, enter and take possession of the premises, sue for and recover all the rent and damages occasioned by such violation along with any other damages or costs to which the Owner may be entitled by law, and re-rent for the remainder of the term at the best rent obtainable.

{¶ 21} We agree that the trial court erred in finding King guilty. We initially note that the trial court's analysis was inconsistent. At first the court appeared to concede that Thaddeus Earl assumed the responsibility of complying with local housing codes, such as R.C.G.O. 93.46(E), noting, "as I read this[,] his agreement is to comply with those." In the following sentence, however, the court indicated, "[h]is agreement is not that he is going to be responsible for anything." The above paragraph provides that "the Owner *may at any time* begin eviction proceedings," and we cannot conclude that King was required to initiate eviction proceedings upon receipt of the citation or assume liability, as the City appears to suggest.

{¶ 22} This conclusion is further supported by a review of Chapter 5321 of the Ohio Revised Code, which governs landlords and tenants. R.C. 5321.06 provides that a

"landlord and a tenant may include in a rental agreement any terms and conditions * * * and any other provisions governing the rights and obligations of the parties that are not inconsistent with or prohibited by Chapter 5321 of the Revised Code or any other rule of law," such as a requirement that a tenant comply with all housing codes.   R.C. 5321.05 (A) governs the obligations of a tenant and provides that a "tenant who is a party to a rental agreement shall do all of the following: (1) Keep that part of the premises that he occupies and uses safe and sanitary," and "(2) Dispose of all rubbish, garbage, and other waste in a clean, safe, and sanitary manner," and "(5) Comply with the requirements imposed on tenants by all applicable state and local housing, health, and safety codes." R.C. 5321.05(C)(1) provides that "[i]f the tenant violates any provision of this section, * * * the landlord may recover any actual damages that result from the violation together with reasonable attorney's fees.   This remedy is in addition to any right of the landlord to terminate the rental agreement [*See* R.C. 5321.11], [or] to maintain an action for the possession of the premises * * *."

{¶ 23}   Since Earl was required by law to keep the premises safe and sanitary, and dispose of waste in a sanitary manner, and since he further assumed the responsibility of complying with R.C.G.O. 93.46(E), the trial court erred in convicting King for the violation of R.C.G.O. 93.46.   Accordingly, King's assignment of error is sustained, and the judgment of the municipal court is reversed and vacated.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Barbara Doseck

Martin Beyer
Hon. Deirdre E. Logan